CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
August 17, 2026
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **BILLY JOE DUTY,** | ) | **Case No. 7:25-cv-00505** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Hon. Robert S. Ballou** |
| | ) | **United States District Judge** |
| **TRACY DAVIDSON, et al.,** | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION**

Billy Joe Duty, proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983 against Major Tracy Davidson of the Appalachian Community Corrections Alternative Program (CCAP) and Shannon Fuller, Superintendent for the Appalachian CCAP. Duty asserts violations of the Eighth and Fourteenth Amendments and is seeking damages in the amount of $100,000.00.

The defendants have moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Dkt. 24. For the reasons set forth below, I conclude that Duty has not set forth sufficient facts to state a plausible claim under § 1983 against any of the Defendants. Therefore, the Defendants' Motion to Dismiss is **GRANTED**.

## I. RELEVANT FACTS

The following summary of the facts is taken from the verified complaint and additional materials Duty submitted with his claim. *See Holley v. Combs*, 134 F.4th 142, 144 (4th Cir. 2025) ("In order to determine whether the claim of a *pro se* plaintiff can withstand a motion to dismiss, it is appropriate to look beyond the face of the complaint to allegations made in any additional materials filed by the plaintiff.") (internal quotation marks and brackets omitted). The factual allegations are presented in the light most favorable to Duty. *See Washington v. Hous.*

*Auth. of the City of Columbia*, 58 F.4th 170, 177 (4th Cir. 2023) (noting that a court reviewing a motion to dismiss must "accept all factual allegations as true and draw all reasonable inferences in favor of the plaintiff").

Duty is currently incarcerated at Appalachian CCAP. Dkt. 1. The complaint fails to provide any dates surrounding the alleged violations, but Duty filed his complaint on July 23, 2025 alleging that when he first arrived at Appalachian CCAP, "Spectrum staff along with Jay Stowers from [Virginia Department of Corrections] told [Duty] that the Brixada[1] [sic] shot was available" at Appalachian CCAP. *Id*. Thereafter, when he requested it, the doctor lied to him, stating that the shot was not available. Duty further alleges that he was discriminated against after filing this lawsuit. He claims that he "was kept from taking the A.W.S.[2] in welding" as well as from attending various outings such as fishing and hiking. *Id*. Duty also claims that he "ha[s] not to this day been giving [sic] a paid job to work and save money like everyone else." *Id*.

Duty asserts that "because [he] asked the Dr. for the Brixada [sic] shot the [defendants] have kept [Duty] from getting [his] A.W.S. certificate, from getting a gate pass, from getting a job and from participating in any fishing trips or anything outside the gates." *Id*. As additional evidence to support his claim, Duty submitted his previously filed grievances relating to his various requests to receive specific drug treatment. A review of the grievances Duty submitted with his complaint in support of his claims provide the following information. On February 12, 2025, Duty filed a grievance requesting "to see Dr. about the MOUD treatment." Dkt. 1. Although unclear who responded to the grievance, the February 13, 2025, response explains that

[1] Brixadi is prescription medicine used to treat opioid use disorder, which is administered as a shot.
[2] "A.W.S." likely refers to American Welding Society, which is a non-profit group that offers professional certification and education classes in welding.

staff addressed Duty's concerns during the nurse visit on February 13, 2025. According to the response, the nurse discussed with Duty his complaint and explained that he had been placed on a list to be evaluated by a doctor on February 25, 2025. The response explains that on January 6, 2025 a nurse discussed with Duty MOUD. The response also indicates that Duty unsigned[3] a refusal for treatment, that he had been seen on two previous occasions by a nurse, January 14, 2025 and February 3, 2025, had been evaluated by "QMHP" while at the program, been to the dentist on January 21, 2025, and will start hepatitis C treatment soon.

On February 26, 2025, Duty filed another grievance requesting "something in writing saying [CCAP] does not offer the suboxone shot in any form." *Id*. The response from staff on February 27, 2025, indicated that the facility does not have anything in writing regarding the suboxone shot. Staff further states that the doctor evaluated Duty on February 25, 2025, and "determine[d] the most appropriate plan," which was discussed with Duty during his visit. *Id*.

On March 10, 2025, Duty filed another grievance requesting "to talk to the Dr. about [Medication Assisted Treatment] services" and that "[n]altrexone[4] does nothing." *Id*. The response on March 11, 2025 from staff is simply that the complaint was "discussed" and Duty was given Tylenol. *Id*. On April 14, 2025, Duty submitted a complaint asking why he had not yet received the Brixadi shot. In response on April 16, 2025, Duty was "[a]dded to MD list." *Id*.

---

[3] Although unclear, information submitted with Duty's Complaint suggests that he may have signed a refusal for treatment when he first arrived at the facility. Due to illegible handwriting, it is also unclear what kind of refusal he signed, but it appears that he may have signed a refusal for naltrexone treatment and later "unsigned" that refusal during the February 13, 2026 nurse visit. However, a timeline cannot be construed with any degree of certainty because the Complaint fails to provide dates other than what is provided on the grievances Duty submitted to the facility, which has been attached to his verified Complaint.

[4] Naltrexone is medication primarily used to manage alcohol use and opioid use disorders.

On April 22, 2025, Duty complained that he cannot get the help he needs at CCAP and requested to be moved to a different facility. Staff responded on April 23, 2025 that "[Duty] ha[s] completed substance abuse programming with Spectrum for Phase I and Phase II …[and is] currently enrolled in Phase 3. [Duty is] also enrolled in welding and the instructor reports that [Duty is] working hard and doing a good job in his class. [Duty is] also enrolled and participating [in] the peer led picking recovery musical instrument class." *Id.*

Duty submitted another grievance on April 24, 2025, requesting "to try the Brixada [sic] treatment" and to "talk to Dr. Fox [himself] to get some answers." The response dated April 28, 2025 indicated the complaint was discussed on April 28, 2025.

## II. STANDARD OF REVIEW

The defendants have moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). A Rule 12(b)(6) motion "tests the sufficiency of a complaint." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While "detailed factual allegations" are not required, a complaint must contain more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks and brackets omitted). Additionally, courts "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (internal quotation marks omitted).

When evaluating whether a complaint states a claim upon which relief can be granted, "the court must construe all factual allegations in the light most favorable to the plaintiff." *Wilcox v. Brown*, 877 F.3d 161, 166-67 (4th Cir. 2017). "Additionally, when a plaintiff raises a civil rights issue and files a complaint *pro se*, the court must construe pleading requirements liberally." *Id.* However, liberal construction is not without limits as "district courts are not the legal advocates of pro se litigants." *Jackson v. Dameron*, 171 F.4th 641, 650 (4th Cir. 2026). While *pro se* complaints "represent the work of an untutored hand requiring special judicial solicitude," district courts are not required to "conjure up questions never squarely presented to them" or to "construct full blown claims from ... fragments." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277–78 (4th Cir. 1985).

## III. DISCUSSION

### A. Section 1983 Claims

Duty presents his claims under § 1983, a statute that permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights. *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "It is firmly established that a defendant in a § 1983 suit acts under color of law when he abuses the position given to him by the State." *Id.* at 49-50. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Duty's complaint fails to state a claim under § 1983 against the named Defendants because he fails to allege any personal involvement in his care by the Defendants or that the Defendants acted personally to deprive him of his rights. Duty only offers conclusory statements and naked allegations, which are contradicted by the evidence submitted with his complaint. For example, Duty claims that "[b]ecause [Duty] asked the Dr. for the Brixada [sic] shot the Major and Superintendent which is Tracy Davidson and Shannon Fuller have kept [Duty] from getting [his] A.W.S. certificate, from getting a gate pass, from getting a job and from participating in any fishing trips or anything outside the gates. [The Defendants] also refuse to fill out the trust part of this paper work." However, the response to Duty's April 22, 2025 request form indicates that (1) Duty is enrolled in substance abuse programming, (2) enrolled in a welding class and (3) enrolled and participating in a peer led musical instrument class. Furthermore, both Defendants are administrators, not direct service providers. As administrators, it is also unlikely that either Defendant would be responsible for providing the trust paperwork, which is usually filled out by a trust officer.

**B. Eighth Amendment Claims**

To the extent that Duty asserts a violation of his Eighth Amendment rights, his claim likewise fails. "The Eighth Amendment, which is applicable to the States through the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments.'" *Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017) (quoting U.S. Const. amend. VIII). "Under the Eighth Amendment, prisoners have the right to receive adequate medical care while incarcerated." *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018). An Eighth Amendment violation occurs when a prison official or healthcare provider "demonstrates 'deliberate indifference' to an inmate's serious medical needs." *Id.*

Although Duty does not name any specific medical defendants, the crux of Duty's Complaint seems to be arguing that "staff"[5] at CCAP were deliberately indifferent to his serious medical need. An Eighth Amendment claim of deliberate indifference has two components. *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). The plaintiff must show that he had serious medical needs (the objective component) and that a defendant acted with deliberate indifference to those needs (the subjective component). *Hixson v. Moran*, 1 F. 4th 297, 302 (4th Cir. 2021). A medical need is sufficiently serious for purposes of the objective component "when it has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gordon v. Shilling*, 937 F.3d 348, 356 (4th Cir. 2019) (internal quotation marks omitted).

The subjective component requires an inmate to show that a defendant "subjectively knew of and disregarded an excessive risk to the inmate's health or safety." *Hixson*, 1 F. 4th at 302. "That is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson*, 775 F. 3d at 178. To establish an Eighth Amendment violation, "it is not enough that an official *should* have known the risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id*.

The United States Court of Appeals for the Fourth Circuit has explained that the mere fact than an inmate received "*some* treatment" for a condition does not necessarily mean that an inmate received "*constitutionally adequate* treatment." *De'Lonta v. Johnson*, 708 F.3d 520, 526

[5] Although Duty does not name anyone other than Defendants Davidson and Fuller, in light of the Fourth Circuit's recent decision in *Nichols v. Bumgarner*, 173 F.4th 511 (4th Cir. 2026), I will consider his attempted claims against CCAP staff.

(4th Cir. 2013). Nevertheless, an inmate "does not enjoy a constitutional right to the treatment of his or her choice," *id*., and a mere "[d]isagreement[] between an inmate and a physician over the inmate's proper medical care … fall[s] short of showing deliberate indifference." *Jackson*, 775 F.3d at 178 (internal quotation marks omitted). Instead, "the treatment given must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Hixson*, 1 F. 4th at 303 (internal quotation marks omitted).

While substance abuse or a diagnosis of opioid use disorder could be considered a serious medical condition, Duty's Complaint is completely devoid of any facts or details about his substance abuse disorder or that he has a substance abuse problem for which treatment is medically necessary. The facts indicate that Duty specifically requested suboxone without providing more information. Supporting documents Duty submitted to the Court with his Complaint indicate that he may have signed a refusal for another prescription, naltrexone, when he first arrived, but later unsigned that same refusal after possibly learning that suboxone was unavailable to him. The facts as alleged could also suggest that the conduct resulted in a mere disagreement between the inmate and medical staff over Duty's desired course of treatment, which "does not rise to the level of an Eighth Amendment violation." *Rhinehart v. Scutt*, 894 F.3d 721, 740 (6th Cir. 2018) (internal quotation marks omitted); *see also Stevens v. Holler*, 68 F.4th 921, 933 (4th Cir. 2023) (recognizing that mere disagreements between an inmate and prison medical staff over the inmate's medical care is insufficient to establish deliberate indifference). What is clear, however, is that Duty has failed to provide enough facts to show he has a substance abuse disorder amounting to a serious medical need sufficient to satisfy the objective prong of the deliberate indifference analysis.

Furthermore, as explained above, Duty completely fails to name any one person of his medical team as a Defendant or present any allegations of how any of those individual's actions violated his constitutional rights. In addition, Duty fails to provide any information regarding "Spectrum staff" and whether "Spectrum staff" can be treated as state or private actors. While *pro se* complaints "require[e] special judicial solicitude," district courts are not required to conjure up full blown claims from cobbled together statements and fragments of facts. *Beaudett*, 775 F.2d at 1277-78.

Even if Duty had explicitly named medical staff as defendants, at most, his claim is a disagreement about his course of treatment, which does not equate to deliberate indifference. Nowhere in his Complaint does Duty claim that he was denied treatment, only that he was denied treatment of his choice, which is not a constitutional right. *De'Lonta*, 708 F.3d at 526. The record shows that medical staff responded to Duty's complaints. Furthermore, Duty's evidence provides that he is currently undergoing substance abuse programming, which was determined by a medical doctor. It is not within the providence of Courts to second-guess the medical judgments of medically trained professionals, which also falls outside the purview of Eighth Amendment protections. *Snipes v. DeTalla*, 95 F.3d 586, 591 (7th Cir. 1996); *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977); *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Miltier v. Beorn*, 896 F.2d 848, 852 (4th Cir. 1990).

Assuming *arguendo* that Duty can meet the objective standard of a serious medical condition, he fails to allege sufficient facts against the named Defendants which amount to a constitutional violation. To allege a deliberate indifference claim against a non-treating prison official, the plaintiff must show that the defendant: (1) failed to promptly provide an inmate with needed medical care, (2) deliberately interfered with the prison doctors' performance, or (3)

tacitly authorized or were indifferent to prison physicians' constitutional violations. *James v. Va. Dep't of Corr.*, Civil Action No. 7:16cv00042, 2018 WL 1528217, at *7 (W.D. Va. Mar. 28, 2018) (citing *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990)).

Nothing in Duty's Complaint or his evidence indicates that either Davidson or Fuller failed to promptly provide Duty with needed medical care, deliberately interfered with the prison doctor's performance or tacitly authorized or were indifferent to a prison physician's constitutional violations. As previously discussed, the evidence Duty submitted shows that he was not only being treated, but that staff promptly responded to his complaints. Duty alleges that the Defendants kept him from getting his AWS certificate in welding among other things after he filed his lawsuit, but his evidence proves otherwise. Duty filed his lawsuit on July 28, 2025, and a response from staff dated April 23, 2025 to a grievance filed April 22, 2025, indicates that not only was he enrolled in a welding class, he was also participating in a peer led musical class and substance abuse programming.

Courts have recognized that a supervisory official could be held liable for a subordinate's actions if the supervisor himself bears personal responsibility for those acts. *Shaw v. Stroud*, 13F.3d 791, 798 (4th Cir. 1994); *see also Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984). To prevail in a claim for supervisory liability, Duty "must show (1) that the supervisor had actual or constructive knowledge that [his] subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by

the plaintiff." *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

Duty fails to present any facts indicating that any of Davidson or Fuller's subordinates acted in a manner that posed a pervasive and unreasonable risk of constitutional injury to Duty. In his Complaint, Duty mentions "Spectrum staff" and a "doctor," but otherwise fails to provide any further information about how either are involved in the alleged violations and/or connected to the named Defendants. Accordingly, Duty fails to allege sufficient facts to state a claim against the named Defendants regarding an Eighth Amendment violation.

**C. Equal Protection Claims**

Duty also seems to assert an equal protection claim but fails to provide sufficient facts rising to the level of a constitutional violation. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).

Here, even giving the benefit of the doubt as a *pro se* litigant, Duty has not alleged facts sufficient to satisfy these elements. Instead, he provides only naked assertions, generalizations, and conclusory allegations. Duty fails to provide specific examples or names of his counterparts who were similarly situated and received more favorable treatment. Plaintiff has alleged no facts that would allow the Court to reasonably infer that the Defendants' actions were motivated by purposeful and intentional discrimination. Furthermore, evidence Duty provided to the Court expressly contradicts his statements. For example, Duty seemingly claims that he was discriminated against after he filed his lawsuit. However, Duty did not file this lawsuit until *after* the alleged discrimination occurred. In addition, Duty claims that he was "kept from

getting [his] A.W.S. certification in welding," but the response provided by staff to his grievance indicate that he was enrolled in a welding class and doing well, according to the instructor. Accordingly, Duty has not stated an equal protection claim against the Defendants. Moreover, an inmate, whether a probationer or convicted for life does not enjoy a constitutional right to "getting a gate pass, [] getting a job and [] participating in fishing trips or anything outside the gates."

**IV. CONCLUSION**

For the reasons stated, Duty's Complaint and other filings, liberally construed, fail to state a claim upon which relief may be granted under § 1983 against the named Defendants. Therefore, I will grant Defendants Motion to Dismiss under Rule 12(b)(6) and dismiss all claims against them without prejudice. An appropriate order accompanies this opinion.

Entered: August 14, 2026

*Robert S. Ballou*

Robert S. Ballou
United States District Judge